UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JONATHAN DELVO,<br><br>Plaintiff,<br><br>vs.<br><br>ST. PAUL TRAVELERS INSURANCE COMPANY, d/b/a/ CHARTER OAK FIRE INSURANCE COMPANY,<br><br>Defendant. | No. CV-06-274-JLQ<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION FOR JUDGMENT AS A MATTER OF LAW AND/OR MOTION FOR NEW TRIAL; ORDER FOR ENTRY OF JUDGMENT |

Jury trial in this matter took place from June 18, 2007 through June 21, 2007. The Plaintiff was represented by James Danielson of Jeffers, Danielson, et al of Wenatchee, Washington. The Defendant was represented by John A. Bennett of Bullivant Houser & Bailey, Portland, Oregon. At the conclusion of the trial the jury returned a verdict for the Plaintiff on his breach of insurance contract claim and also found that the Defendant had breached the duty of good faith. By reason of this latter finding and the law of the state of Washington, the parties stipulated that the Plaintiff was also entitled to recover on his Washington Consumer Protection Act claim and further stipulated that the award thereon and the amount of the Plaintiff's attorneys fees would be left for the court.

The Defendant has filed a Motion For Judgment As A Matter Of Law And/Or For New Trial. Argument on that matter was heard on August 28, 2007.

ORDER - 1

## BACKGROUND

The Plaintiff was the owner and operator of the Echos Bistro restaurant located in Leavenworth, Washington. The Echos Bistro was covered by a Commercial General Liability and Businessowners Property Insurance policy issued by the Defendant insurance company. That policy covered, *inter alia,* real property and personal property loss by reason of fire and also included business income and wage continuation coverage for the employees.

On November 17, 2005, a fire completely destroyed the Echos Bistro restaurant. The Defendant determined the fire was accidental and that the Plaintiff was entitled to payment under the policy issued by the Defendant. Between the time of the fire and June 13, 2006, the Defendant had paid the Plaintiff $ 453,136.16  for losses under the policy. After these initial payments, but before completion of the payments due under the policy, a former employee of the Echos Bistro restaurant, Ms. Dana Newman, contacted the Defendant's insurance adjuster, Bruce Morrison,  and told him that the Plaintiff had required her to refund the sum of $2,500 in cash from the $6,000 check given to her by the Plaintiff for wages after the fire and for which the insurance policy provided coverage . This statement was made by Ms. Newman after the Plaintiff had terminated her employment and after Ms. Newman had filed a criminal complaint against the Plaintiff stemming from an employment termination confrontation.

Upon inquiry and further examination of the Plaintiff under oath by the insurance company, the Plaintiff admitted receiving this money from Ms. Newman, but contended it was repayment of a moving and housing loan made to her at the time she was hired. Ms. Newman had also informed the adjuster that other employees, Vincente Sanchez, Robert Rosa, and Mariano Mejia had also been required to pay the Plaintiff a portion of wage loss payments. The Plaintiff denied receiving any "kickback" from any of his employees. The Defendant's adjuster, Bruce Morrison, interviewed Vincente Sanchez, but did not contact or interview Robert Rosa or Mariano Mejia. At trial Messrs. Rosa and

ORDER - 2

Mejia denied having made any payments from their wages to the Plaintiff and further testified that they had called the adjuster to inform him of these facts, but that Mr. Morrison did not return their calls.

Mr. Morrison personally contacted and interviewed Vincente Sanchez. Mr. Sanchez, who has limited English speaking and comprehension abilities, was interviewed by Mr. Morrison without the benefit of an interpreter. Mr. Sanchez allegedly told Mr. Morrison that he had, in fact, paid the Plaintiff monies from his wage payments. This interview was recorded by Mr. Morrison and besides Morrison's testimony at trial concerning the interview, the tape recording of the interview was played for the jury. Based upon the statements of Ms. Newman and Mr. Sanchez, the Defendant carrier then advised the Plaintiff that it was treating the policy as being null and void based upon alleged wage claim misrepresentations. The Plaintiff then initiated this action. The Defendant counterclaimed against the Plaintiff to recover the $453.136.16 it had paid the Plaintiff under the policy.

Vincente Sanchez was deposed with the use of an interpreter and stated that he had returned a portion of his wage payment to the Plaintiff. However, thereafter, on April 4, 2007, Mr. Sanchez, on his own, went to the Plaintiff's attorney's office and recanted his prior statement and testimony as to payments to the Plaintiff. Sanchez signed a sworn affidavit recanting his prior statements. The Defendant carrier was advised of this recantation and furnished a copy of the affidavit. At trial Sanchez testified, with the assistance of an interpreter, that he had made the allegedly false accusations against the Plaintiff because he was upset with the Plaintiff for not giving him a favorable job recommendation to the Plaintiff's sister. Mr. Sanchez's trial testimony was impeached through the use of his prior statements to Mr. Morrison. Mr. Sanchez was also impeached by counsel for the Defendant through the use of the statements made by him at his deposition. At trial, while Sanchez admitted to having made the inconsistent statements to the adjuster and in his deposition, he stated that those prior statements were

ORDER - 3

false and motivated by his negative job rating allegedly given by the Plaintiff.

Following initiation of this action by the Plaintiff to recover the balance allegedly owing on the insurance policy, the Defendant denied coverage, alleging that the Plaintiff had made material false representations in his wage continuation claims, *vis a viz*, for Ms. Newman and Mr. Sanchez and took the position that the entire insurance policy was null and void.  The Defendant sought to recover the $ 453,136.16 it had previously paid to the Plaintiff under the policy.

The First Claim issues submitted to the jury were those of the insurance contract claims and whether the Plaintiff had made material false misrepresentations to the Defendant carrier for wage continuation payments, rendering the entire insurance policy null and void.  The jury found against the Defendant and for the Plaintiff on the contract claims in the amount of $299,729.46 representing unpaid monies owing under the contract. Included in this verdict was the sum of $50,000 for alleged Law and Ordinance unpaid  coverage, discussed *infra*.

 The Second Claim issue submitted to the jury for its consideration if it found for the Plaintiff on the contract claim, was the Plaintiff's claim that the carrier had breached the duty of good faith.  The jury found for the Plaintiff on this Second Claim in the amount of $269,000. Included in this award was the sum of $19,000 representing mortgage payments made by the Plaintiff on another building which he purchased rather than rebuilding the burned building, also discussed *infra*.  Plaintiff contended such payments constituted appropriate "loss of use" damages.

## THE WASHINGTON CONSUMER PROTECTION ACT CLAIM

As indicated, *supra,* the parties stipulated that if the jury found for the Plaintiff on the Second Claim of breach of the duty of good faith, under Washington law, such a finding  was also a *per se* finding of a violation of the Third Claim of violation of the Washington Consumer Protection Act which entitled the Plaintiff to punitive damages against the Defendant in an amount not to exceed $10,000 plus the Plaintiff's attorney

ORDER - 4

fees incurred in the pursuit of this action. As stated at oral argument on the post-trial motions, this court found that the appropriate amount of punitive damages was $5,000. The Defendant did not dispute that the amount of the Plaintiff's requested attorney fees of $93,017.22 was a reasonable amount.

## MOTION FOR JUDGMENT AS A MATTER OF LAW

The Defendant does not challenge the sufficiency of the evidence to warrant the jury finding for the Plaintiff on the First Claim- breach of contract. The court had given the Defendant's requested instruction that the Defendant only had to prove a material misrepresentation by the Plaintiff by a "preponderance of the evidence," rather than by "clear, cogent and convincing evidence," the fraud standard, as urged by the Plaintiff. The jury rejected the Defendant's misrepresentation defense.

The Defendant, in its motion for judgment *n.o.v.,* contends that the evidence presented to the jury in this case was insufficient to sustain the Second Claim jury finding that the Defendant had breached the "duty of good faith" as required by the Washington cases and insurance regulations. The Defendant contends that the jury should not have been allowed to consider information learned by the Defendant concerning the claimed misrepresentations by the Plaintiff after the Plaintiff initiated this lawsuit. Common sense and the Washington case relied on by the Defendant require rejection of this position. If the Defendant's post-lawsuit position were the law, then an insurance company who received pre-suit information, later learned to be false after institution of suit, could rely on the pre-suit erroneous information to forever reject payment on a policy, even if the information was established as false after the initiation of the action by the insured policyholder. Such a position defies logic. In this case, the rule suggested by the Defendant would allow the Defendant to completely ignore any post-suit information, including the fact that Mr. Sanchez had recanted his earlier statement and deposition of a "kickback." The rule suggested by the Defendant would also allow an insurance carrier to completely disregard any credibility issues which surfaced post-suit with a witness

ORDER - 5

such as Ms. Newman and the lack of confirmation of her claims. In the recent case of *Merrick v. Paul Revere Life Ins. Co.*, ___F. 3d. ____, No. 05-16380, decided by the Ninth Circuit on August 31, 2007, the court held that **post-litigation** notes and other documents reflecting the "thought processes" underlying the carrier's rejection of the insured's claim were proper matters for discovery and trial on a bad faith claim.

The Defendant relies on the Washington case of *Estate of Thomas Hall*. 869 P. 2d 116, 73 Wash. App. 359 (1994), involving the issuance of a group policy to an individual who did not qualify therefor by reason of his age. In that case the Washington Appellate Court, at 365-366, cited Washington Administrative Code (WAC) 284-30-330 which provides in part that certain acts by insurers are "unfair or deceptive acts or practices in the business of insurance, specifically applicable to the settlement of claims." The Defendant insurer relies on this language to suggest that once an insured brings an action against the insurer alleging unfair practices in the settlement of an insurance claim, any post-suit information furnished the insurer concerning the claim cannot be a part of the "settlement of claims" process when considering whether the insurer has acted in bad faith. Washington law includes a requirement that the insurer give equal consideration to the interests of the insured as to its own and requires the insurer to make a reasonable investigation. Certainly, information furnished by the insured to the insurer after the initiation of suit on the policy was properly considered by the jury in determining if the Defendant conducted a reasonable investigation. The jury found that the Defendant had not acted in good faith and sufficient evidence was presented to support that finding. Such evidence included a failure to consider Mr. Sanchez's recantation, the failure to contact other employees such as Mr. Rosa and Mr. Mejia, the refusal to accept the insured's denial of the Newman allegations and his explanation thereof, and the fact that Ms. Newman's allegations against the Plaintiff may have been motivated by ill-well.. *Indus. Indem. Co. v. Kallevig*, 114 Wash. 2d 907, 792 P. 2d 520 (1990).

The Defendant next argues that the $50,000 sought by the Plaintiff and awarded

ORDER - 6

by the jury on the breach of contract First Claim for "Ordinance or Law Coverage," was not authorized in that the oven hood allegedly required by Ordinance was never installed since neither the original building nor the new building was built out for a replacement restaurant. The Ordinance and Law provision of the policy (Ex. 28, MP T1 35 01 00) provides in part that the carrier will not pay under that clause "Until the property is actually repaired or replaced, at the same or another premises." This condition precedent has not occurred. The Defendant has agreed that it will pay under this clause if, within two years of the final conclusion of this action, the original property is repaired or replaced and if ordinance mandated increased costs are incurred therein. Therefore, the court has determined that the $50,000 Law and Ordinance portion of the jury verdict on the First Claim shall be reduced by $50,000 to a total award of $249,729.46.

The Defendant also contends that the verdict on the Second Claim, breach of the duty of good faith, should be reduced by the $19,000 included therein representing mortgage payments made by the Plaintiff on the new building which he purchased in lieu of rebuilding the destroyed building. The Plaintiff argues that this $19,000 could represent loss of use of either building during the time the Defendant withheld final payment on the policy. However, there was no loss of use evidence presented and the Plaintiff is not entitled to recover his mortgage payments on the new building. The Defendant's Motion is granted to the extent of reduction of the jury's verdict on Count by the $19,000 to a total award of $250,000.

## MOTION FOR NEW TRIAL

The Defendant contends that a new trial must be granted since the court failed to instruct the jury as a matter of law that a misrepresentation in the wage continuation claim, in any amount, was "material" as a matter of law. The court disagrees. The primary issue in this trial was whether the Plaintiff had made material misrepresentations to the Defendant in his claims for wage continuation coverage for employees Newman and Sanchez. The trial was not about whether the alleged false claims were "material."

ORDER - 7

The trial solely concerned whether the claims were, in fact, false by reason of "kickbacks" from Newman and Sanchez required by the Plaintiff. The jury clearly found that the Plaintiff had not intentionally misrepresented a material fact in its wage continuation claims to the Defendant.

The jury instructions were replete on this issue. Instruction # 2 set forth that "Charter Oak claimed that Plaintiff Delvo made intentional misrepresentations in his wage continuation claims." Throughout Instruction No. 2 the fact that Charter Oak claimed that the wage continuation claims were misrepresented was clearly presented to the jury. Instruction No. 4 set forth the elements of Charter Oak's claim that the Plaintiff intentionally misrepresented material facts in his insurance claim. In that Instruction, the court instructed the jury that "A fact is material when it concerns a subject relevant and germane to the insurer's determination at the time when the claim was made." In Instruction No. 5, the court instructed the jury on the provisions of the insurance policy concerning "Concealment, Misrepresentation or Fraud," and further instructed the jury that "this provision of the insurance contract further provides that if the insured intentionally makes a false claim or material misrepresentation, the insurer may treat the insurance contract as being null and void and the insurer may recover all sums paid under the insurance contract." Finally, Instruction No. 18A again framed the issue that was before the jury and instructed the jury that "What Charter Oak does contend is that the Plaintiff Jonathan Delvo knowingly and intentionally misrepresented and made false claims as to the amount of payments actually made to the former Echos Bistro employees. Charter Oak contends that the Plaintiff Delvo did not actually make payments to those employees in the amount stated to the Defendants." The jury was clearly instructed on the issues and no reasonable juror would have found that the statements made in the wage claims by the Plaintiff were not "material." Even if the court should have included an instruction that a claim for wage continuation, if false, was material, such an instruction could not have possibly changed the jury's verdict in this case.

ORDER - 8

The Defendant next contends that the court erred in not allowing counsel for the Defendant to read various portions of the deposition of Vincente Sanchez to the jury after Vincente had testified and admitted to the content of his deposition. The Defendant contended that the deposition was not hearsay. The court agreed that the deposition was not hearsay, but ruled that the Defendant had been allowed to impeach the witness Sanchez through the use of the deposition. On cross-examination, Sanchez admitted to making the relevant statements in his deposition that he had repaid monies from his wage check to the Plaintiff. Had Sanchez denied making any of the statements in his deposition, the court, of course, would have allowed counsel for the Defendant to read those portions of Sanchez's deposition containing statements contrary to his trial testimony. as allowed by F.R. Evid. 801(d)(1). However, here the witness Sanchez admitted making his deposition statements and those matters were presented during his cross-examination.

Counsel for the Defendant was not limited, in any manner, in cross-examining Sanchez with the use of his deposition and, as stated, Sanchez admitted to making his deposition statements. Reading the deposition statements again to the jury, after having been covered in the cross-examination, would have been a waste of time. Certainly, the rule has never been that even when the witness admits to the inconsistent statements during his cross-examination and makes no denial thereof, counsel should again be allowed to read to the jury the portions of the deposition that had already been admitted to by the witness, without denial of any of the statements. Such reading of deposition testimony, after the witness has already admitted thereto and left the stand, would be repetitive of what the witness had already admitted and testified to while on the witness stand and would result in substantial delay in all trials. Obviously, if a witness denies the statements in his deposition, then counsel may read the relevant portions of the deposition to the jury. Such was not the case here. The witness admitted to the deposition statements. Even if the court should have allowed the reading of the admitted to

ORDER - 9

1  deposition testimony, the error, if any, could not have affected the outcome of this matter.
2  Through cross-examination, the jury heard that the witness Sanchez had made the
3  statements in his deposition. He admitted to making them. In addition thereto, the witness
4  Morrison, the Defendant's adjuster, testified that Sanchez made the same statements to
5  him that Sanchez made during his deposition and Sanchez admitted making those
6  statements.  Besides all of this, the court allowed the Defendant to play for the jury the
7  recorded interview off Sanchez by Morrison, consistent with the deposition testimony.

9  From the start of this matter, and during trial, the Defendant sought to bring into
10 evidence the fact that the Plaintiff previously suffered an unrelated fire loss to another
11 restaurant.  There is no contention that that loss was other than accidental.  Initially, the
12 Defendant sought to belatedly add a witness, Penny Johnson, to its witness list.  Penny
13 Johnson was an employee at the Edel Haus restaurant, where the prior fire took place.
14 The Defendant proposed to add Johnson as a witness under the contention that she would
15 testify to the prior fire and that the Plaintiff "asked her to return to him a portion of her
16 continuing wages, and that she refused the request."  As stated by this court in its
17 Memorandum Opinion and Order Denying Motion For Summary Judgment (C.R. 78),
18 Ms. Johnson's testimony would have presented to the jury herein the fact that the Plaintiff
19 had another unrelated fire loss a year or two prior to this loss.  The danger of introducing
20 such a matter into this case is obvious to anyone upon reflection on human nature and
21 suspicions, including those of a jury.  This court, *inter alia,* rejected the belatedly
22 proposed testimony of Ms. Johnson including a balancing analysis under F. R. Evid. 403,
23 because of the risk of unfair prejudice from the interjection of the unrelated fire. As stated
24 in *United States v. Curtin*, ___F. 3d ____, 2007 WL1500295 (9th Cir., May 24, 2007) (*en*
25 *banc*) and as recognized in the 1972 Advisory Notes concerning the "discrete" purpose
26 of Rule 404 character evidence:

27 Character evidence is of slight probative value and may be very prejudicial.  It

ORDER - 10

> tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

Again during the trial, the Defendant sought to introduce into evidence the fact of the earlier fire to show that the Plaintiff had received monies from the insurance coverage on that restaurant and therefor had no need to borrow money. The reasons proffered by the Defendant for the introduction of this evidence and that of the prior fire were clearly insufficient to outweigh the prejudice that could flow from the jury hearing of that earlier fire. F. R. Evid. 403.

Lastly, the Defendant contends the court erred in not allowing the jury to have the tape recording of the Vincente Sanchez interview by the Defendant's adjuster Morrison delivered to the jury room during its deliberations. Mr. Morrison testified to what Mr. Sanchez stated during his interview and the court, during the trial, allowed the Defendant to play a recording of that interview during Mr. Morrison's testimony. In responding to the jury's request to have the tape recording delivered to the jury room during deliberations, the court advised the jury that if it wished to listen to the tape recording again, it would have it played for the jury in the courtroom. Such ruling was consistent with the procedure of this court when a jury requests to have certain portions of trial testimony read back to them by the court reporter. By playing back the tape recording in the courtroom, the court would have been in a position to advise the jury to consider the evidence as a whole and not place undue emphasis on any individual portion thereof. The jury did not request to hear the tape recording played again in the courtroom. This ruling was a discretionary ruling by the court.

## **ATTORNEY FEES**

Under the law of the state of Washington, as the Defendant concedes, under both the First Claim, breach of the insurance contract, and the Third Claim of violation of the Washington Consumer Protection Act, the Plaintiff is entitled to recover its reasonable

ORDER - 11

attorney fees and costs. The Washington Consumer Act so specifically provides, and in *Olympic Steamship Company v. Centennial Insurance Company,* 117 Wash. 2d. 37, 811 P. 2d 673, 681 (1991), the Washington Supreme Court established the rule that an insured is entitled to recover attorney fees that it incurs when its carrier refuses to pay a justified claim of the insured. The Defendant does not challenge the reasonableness of the Plaintiff's request in the amount of $93,017.22 and this court, having presided over this matter from its filing, finds that amount to be reasonable.

## CONCLUSION

Based upon the foregoing the Defendants's Motion For Judgment As A Matter Of Law and For A New Trial must be and are Denied. The court concludes that judgment should be entered for the Plaintiff and against the Defendant in the amount of $597,746.68 composed of $249,729.46 on the First Claim, $250,000 on the Second Claim. $5,000 on the Third Claim, and $93,017.22 attorney fees.

The Clerk of this court shall enter this Order, enter judgment in favor of the Plaintiff against the Defendant in the amount of $597,746.68, forward copies to counsel, and close this file.

**DATED** this 10th day of September 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 12